(Hamilton County Common Pleas.)

ATLAS NATIONAL BANK et al. v. CITY of CINCINNATI, et al.

---

A bid for an issue of municipal bonds will not be declared invalid because of the failure of the bidder to state, as required in the advertisement, the gross amount which such bidder will give for the bonds, provided the gross amount of his bid can be ascertained by computation.

A bid of "103.50" and interest for bonds is not ambiguous.

When there is no difference of opinion between the purchaser and the seller as to the terms of the purchase, and the bid accepted is the highest made, there can be no complaint on the part of the other bidders.

S. W. Smith, J.

In this case plaintiffs bring their action to enjoin the delivery of certain bonds known as "Avenue Pavement Bonds," issued by the City of Cincinnati in the sum of $150,000 to the defendants, Feder, Holzman & Company, and ask for a mandatory injunction to require the City of Cincinnati to deliver said bonds to plaintiffs for the reason that said defendants, Feder, Holzman & Company, are not the highest bidders for said bonds, but that plaintiffs are the highest bidders, and because said bid of Feder, Holzman & Company is claimed by the plaintiffs to be irregular and ambiguous. The facts in the case are about as follows:

The law under which these bonds were issued, advertised and sold is found in the 90th volume of the Ohio Local Laws, at page 267, and is an act to authorize cities of the first grade of the first class to improve turnpikes or avenues, which become city streets, and to provide for the payment of such improvements. Section 6 of this act provides for the issuance of bonds and is as follows:

Said Board of Administration shall receive bids for said bonds after advertising same for sale once per week for four consecutive weeks, on the same day of the week, in some newspaper of general circulation in said city, and shall sell the same for not less than the par value thereof, with accrued interest, to the highest bidders. The money arising from the sale of said bonds shall be placed in a fund called the 'Avenue Pavement Fund;' and a careful account of the condition of said fund shall be kept by the Auditor of said city."

In accordance with this act the City of Cincinnati, duly advertised certain bonds known as "Avenue Pavement Bonds of the City of Cincinnati" in the sum of $150,000.00, bearing interest at the rate of 3½ per cent. per annum, payable semi-annually, and payable December 1, 1920, at the American Exchange National Bank, New York, New York City, redeemable December 1, 1910, or at any time thereafter, at the American Exchange National Bank, New York City.

These bonds were advertised to be sold to the highest bidder for not less than their par value, and the bidders by the terms of said advertisment were required to state the number of bonds bid for, the gross amount they would pay for the bonds bid for, with accrued interest to the date of the transfer, and that as a guarantee of good faith on their part

they were required to enclose with their proposal, a certified check, payable to the board of public service for five per cent. of the gross amount of said bonds. These proposals were required to be in writing, signed by the bidder and to be sealed and endorsed "Bids for Avenue Bonds." They were to be deposited with the clerk of the board of public service before noon on April 24, 1901, on which day, at 12 o'clock noon, said proposals were received and opened by said board of public service of the City of Cincinnati.

Among the proposals submitted for these bonds at said time and place was a proposal by the plaintiffs, in which plaintiffs offered to pay therefor, par, accrued interest and a premium of $4,509, or a total of $154,509 and accrued interest, and deposited as required a certified check for five per cent of the gross amount of said bonds, and conformed to all the particulars in the terms of the advertisement. The defendants, Feder, Holzman & Company submitted a proposal for the bonds as follows:

"For the $150,000 legally issued Avenue Improvement Bonds advertised to be sold this day, bearing date December 1st, 1900, payable December 1st, 1920, and redeemable at the option of the city on or after December, 1910, bearing interest at the rate of 3½ per cent. per annum, payable semi-annually, we will pay 103.50 interest." and a check for $7,500 was enclosed.

To this bid the plaintiffs objected for the reason that it is irregular and ambiguous, and that upon its face it appears that the defendants, Feder, Holzman & Company, only offered to pay 150,103.50 for all of said bonds and accrued interest, and that this proposal was less than the proposal submitted by plaintiffs.

The answer of the City to this is that said proposal is not irregular or ambiguous, but that the bid of 103.50 and interest upon the face of the bid shows that the sum of $155,250.00 and interest was to be paid by the defendants, Feder, Holzman & Company, for said bonds.

The irregularity complained of by the plaintiff is, that the bidders in the advertisement were required to state the number of bonds bid for, and the gross amount they would pay for the bonds bid for, and the accrued interest to date of transfer; and second, that the bid is ambiguous in that it uses the figures "103.50" in their proposal, and that upon its face it does not appear what this 103.50 means.

As to the first point, it must be borne in mind that the Board of Public Service would be only required to do that which the statute compels it to do, the statute being mandatory. There is nothing in Section 6 of the act referred to which compels the city of Cincinnati to do anything more in the way of advertising than to receive bids for the bonds after advertising the same for sale once per week for four consecutive weeks, on the same day of the week in some newspaper of general circulation in said city, and they shall sell the same for not less than the par value thereof, with accrued interest, to the highest bidder. The mere fact that the board required in its advertisement that the gross amount should be stated by the bidder is immaterial, if the gross amount can be ascertained by computation. This, therefore, brings us to the question of the ambiguity of the bid. Upon this point the court is of the opinion that the bid is not ambiguous. As must have been understood by the Board of Public Service, as well as by the bidder, the transaction being one relating to the purchase and sale of bonds; keeping in mind the amount of bonds offered for sale, the rate of interest, and the manner in which such bonds are bought and sold, there can be but one construction put upon the bid, and that is, that the defendants, Feder, Holzman & Company, offered to pay for the $150,000 of bonds, 103½ per cent. and interest—that is, upon computation, the entire sum of $155,250.00 and interest. This, therefore, shows that they are the highest bidders for the bonds, complying in all respects with the advertisement for the sale.

In 1st Dayton, Montgomery County Term Reports, at page 141, Irwin v. Greenville, it is held that in a sale of bonds by council, courts must presume that the action of council was proper, and must not interfere unless there is fraud or transgression of their powers in the sale or awarding of said bonds. In the sale of bonds of a municipal corporation issued to meet the expenses of public improvements authorized, the city council, in considering bids therefor, must carefully canvass and examine them, and see which are and which are not catchy and uncertain; which are and which are not in good faith, and then honestly act and accept the highest and best bid therefor; and in the absence of any fraud or transgression of their powers, a court of equity will have to presume that such council acted properly, and must refuse to interfere.

In this case there is no allegation of fraud or transgression of the powers of the Board of Public Service, or any complaint of any kind made against the board. The board and the purchasers' minds met upon the bid, and it is for the best interests of the city that such bid should be accepted. As between the other bidders themselves, where there is no difference of opinion between the purchaser and the seller of the bonds, and the bid is the highest, there can be no cause of complaint by them.

The injunction will therefore be dissolved.

H. D. Peck for plaintiffs.

Charles J. Hunt for defendants.